**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTOPHER D. SCHNORR,

      Petitioner,

                                CASE NO. 2:05-CV-74641
v.                           HONORABLE VICTORIA A. ROBERTS
                                UNITED STATES DISTRICT JUDGE

KENNETH McKEE,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE**
**PETITION FOR WRIT OF HABEAS CORPUS**

Christopher D. Schnorr, ("Petitioner"), confined at the Ionia Maximum

Correctional Facility in Ionia, Michigan, seeks a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for armed

robbery, M.C.L.A. 750.529; and being a fourth felony habitual offender, M.C.L.A.

769.12.  For the reasons stated below, the application for writ of habeas corpus is

**DENIED.**

**I.  Background**

Petitioner was convicted of the above offenses following a jury trial in the

Macomb County Circuit Court.  Petitioner was acquitted of the charge of possession of a

firearm in the commission of a felony.

The Court recites verbatim the relevant facts regarding Petitioner's conviction

from the Michigan Court of Appeals' opinion affirming his conviction, which are

1

presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D.

Mich. 2006):

> Defendant's conviction arises from the robbery of a pizza carry-out restaurant in St. Clair Shores on April 28, 2001. Lisa Jeffers identified herself as the co-manager of the restaurant on duty at the time of the robbery. Jeffers testified that business was slow that night, so she sent the rest of the employees home at 9:00 or 10:00 p.m., leaving herself alone. According to Jeffers, at approximately 11:30 p.m., a man wearing a baseball cap came in, showed a gun, and demanded all the money. Jeffers handed over all the money from the cash register, but the robber "was very agitated and wanted more," causing Jeffers to start opening a safe, during which the intruder said, "Faster, bitch, I'll kill you right here." Jeffers testified that she opened the safe, giving the assailant access to some rolled coins and a bank bag. According to Jeffers, defendant took the money and "walked out." Jeffers later identified defendant in court as the robber.
> *People v. Schnorr,* No. 242306, * 1 (Mich.Ct.App. April 29, 2004).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 471 Mich. 921, 688

N.W.2d 830 (2004).

Petitioner seeks a writ of habeas corpus. For purposes of judicial clarity, the Court

will paraphrase Petitioner's claims, rather than recite them verbatim:

> I. The trial court erred in admitting "other acts" evidence of a separate armed robbery, in violation of M.R.E. 404(b).

> II. The out-of-court identification of Petitioner by the victim should have been suppressed because the initial photographic line-up was conducted without counsel and the prosecutor failed to establish an independent basis for the victim's subsequent in-court identification of Petitioner.

> III. The prosecutor committed misconduct by improperly questioning Petitioner about his failure to call witnesses to corroborate his alibi defense.

## II. Standard of Review

2

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

#### A. Claim # 1. The prior bad acts evidence claim.

Petitioner first claims that the trial court erred in allowing the prosecutor to introduce evidence of Petitioner's involvement in an earlier armed robbery, in violation

3

of M.R.E. 404(b). [1]

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Foster v. Withrow,* 159 F. Supp. 2d 629, 642-43 (E.D. Mich. 2001).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Likewise, Petitioner's claim that this evidence was irrelevant does not raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. *See Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D.

---

[1] Petitioner was convicted separately of this armed robbery and unsuccessfully challenged this armed robbery conviction in a separate habeas action before this Court. *See Schnorr v. Lafler,* No. 2008 WL 176669 (E.D. Mich. April 17, 2008).

4

Mich. 1978). Finally, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002). Petitioner is therefore not entitled to habeas relief on his first claim.

   **B. Claim # 2.  The improper line-up claim.**

   Petitioner next contends that the trial court erred in allowing the victim to identify him in court as her assailant.

   Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

   1. the witness's opportunity to view the criminal at the time of the crime;
   2. the witness's degree of attention at the time of the crime;
   3. the accuracy of the witness's prior description of the defendant;
   4. the witness's level of certainty when identifying the suspect at the confrontation; and,
   5. the length of time that has elapsed between the time and the confrontation.

5

*Neil v. Biggers,* 409 U.S. at 199-200; *United States v. Gatewood*, 184 F. 3d 550, 556 (6th Cir. 1999).

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

Petitioner's primary contention is that the victim's in-court identification was tainted because she initially participated in a photographic line-up in which Petitioner was unrepresented by counsel. Although the victim failed to identify Petitioner at the photographic line-up, Petitioner argues that the victim's exposure to Petitioner's photograph at the uncounseled photo array influenced her subsequent identification of Petitioner at a live line-up and ultimately tainted her in-court identification.

A pre-trial photographic identification is not a critical stage under the Sixth Amendment at which counsel is required to be present. *United States v. Ash*, 413 U.S. 300, 321 (1973); *Whalen v. Johnson*, 438 F. Supp. 1198, 1203 (E.D. Mich. 1977). Petitioner has no federal constitutional right to have counsel present at an investigative photographic identification procedure at which he or she is identified. *Hanks v. Jackson,* 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000); *See also Payne v. Smith,* 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002)(Sixth Amendment does not guarantee the accused the right

6

to counsel at a photographic array). Therefore, Petitioner would not be entitled to habeas relief simply because he was not represented by counsel at the initial photographic line-up.

Under the Michigan Constitution, the right to counsel at a photographic identification attaches once a defendant is in custody. *See People v. Kurylczyk,* 443 Mich. 289, 302; 505 N.W. 2d 528 (1993). However, where no counsel was present during a photographic identification procedure, an in-court identification of the defendant may nonetheless be received where the prosecution can show that the in-court identification has a basis that is independent of the prior identification procedure. *See People v. Gray,* 69 Mich. App. 685, 687; 245 N.W. 2d 165 (1976).

Petitioner has failed to allege or to show that the photographic show-up or the subsequent live line-up were unduly suggestive. In addition, the mere fact that Petitioner may have been identified by the victim at a preliminary examination that was conducted subsequent to the photographic or live line-up does not make the identification procedure unreliable or unnecessarily or impermissibly suggestive. In *Baker v. Hocker*, 496 F. 2d 615, 617 (9th Cir. 1974), the Ninth Circuit held that a robbery victim's identification of the defendant at a preliminary hearing, after having failed to identify him at a police lineup, was not unnecessarily or impermissibly suggestive, even though the petitioner in that case was seated at the preliminary hearing next to the two co-defendants whom the victim had previously identified, thereby suggesting that petitioner was the third robber. In rejecting the claim, the Ninth Circuit admitted that any in- court identification

7

confrontation, whether at a preliminary hearing or at trial, "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Id.* at 617. However, the Court ruled that more than suggestion is required for a due process violation. The procedure must create 'unnecessary' or 'impermissible' suggestion. *Id.*

In *Howard v. Bouchard,* 405 F. 3d 459, 471-72 (6th Cir. 2005), the Sixth Circuit held that a lineup identification, which was made only after a witness had seen the petitioner on two occasions brought into the courtroom and seated at the defense table during the preliminary examination, was not impermissibly suggestive, where nothing suggested that the witness saw more than the back of the petitioner's head on one occasion, or that he was positioned to get a good look during the second proceeding, or that the police officers said anything to suggest defendant's guilt, and both proceedings were quickly adjourned.

Moreover, assuming that the pre-trial identification procedures were unduly suggestive, Petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. The victim testified at a pre-trial evidentiary hearing that when the perpetrator entered the store, she took a good look at him, in accordance with her training to look into a customer's eyes. The victim testified that when the intruder approached the counter, she was about two feet apart from him. The victim described the store's lighting as "[v]ery bright fluorescent." Asked about her vision, the victim boasted that it was "[r]eally good, 20/20," adding, "I work in optical." The victim subsequently picked Petitioner

8

out at the live lineup, telling the police detective, "that guy looks familiar" and "that's the guy who robbed me."  These factors all support a finding that an independent basis existed for the victim's in-court identification of Petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001).

Moreover, with respect to the victim's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard,* 405 F. 3d at 473; See also *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun).  In light of the fact that the victim was being robbed at gunpoint, it was not unreasonable to conclude that the victim paid a high degree of attention to her assailant.

Additionally, even if there were slight discrepancies between the victim's initial description of her assailant and Petitioner's appearance, this would be insufficient to render the in-court identification suspect, in light of the fact that victim was able to get a good look at Petitioner and testified that she was certain in her identification of Petitioner as being the suspect. *See United States v. Hill,* 967 F. 2d at 232-33.

Finally, the reliability of the victim's in-court identification is supported by the fact that she "testified without equivocation" that Petitioner was the robber. *Howard,* 405 F. 3d at 473.

Petitioner is not entitled to habeas relief on his second claim.

**C.  Claim # 3.  The prosecutorial misconduct claim.**

9

Petitioner next complains that the prosecutor committed misconduct by questioning Petitioner about his failure to call his brother or other witnesses to corroborate his alibi defense.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

A prosecutor is free to comment upon the failure of a defendant to call or to subpoena available alibi witnesses. *United States v. Edwards*, 159 F 3d 1117, 1130 (8th Cir. 1998).  A prosecutor may comment upon a defendant's failure to present alibi witnesses so long as the comments are not phrased in such a way to call attention to the defendant's own failure to testify. *United States v. Fleishman*, 684 F 2d 1329, 1343 (9th Cir. 1982).  It is also permissible for a prosecutor to comment on the failure of alibi witnesses to voluntarily come forward. *United States v. Laury*, 985 F 2d 1293, 1305-06

10

(5th Cir. 1993). A prosecutor's comment on a defendant's failure to call alibi witnesses does not shift the burden of proof to the defendant. *United States v. Schultz*, 698 F 2d 365, 367 (8th Cir. 1983).

In a case almost on point, the Sixth Circuit ruled that the defendant's wife's delay in providing an alibi for the defendant was a proper subject of inquiry for cross-examination of the wife. *See United States v. Aguwa*, 123 F 3d 418, 420 (6th Cir. 1997).

In this case, the prosecutor's questions and arguments concerning Petitioner's failure to corroborate his alibi were proper and did not amount to prosecutorial misconduct.

As a related claim, Petitioner claims that he was forced to take the witness stand to testify about his alibi, after the trial court ruled that Petitioner's proposed alibi witness, his brother, could be impeached with his prior criminal record.   In rejecting this claim, the Michigan Court of Appeals noted that:

> "The trial court did not err in subjecting defendant's alibi witness to the same cross-examination to which any other witness would be exposed, and defendant was not denied a fair trial simply because he was obliged to take this into account while weighing the pros and cons of calling that witness or testifying himself." *Schnorr,* Slip. Op. at * 7.

A defendant in a criminal trial is frequently forced to testify himself and call other witnesses in an effort to reduce the risk of conviction. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. *Williams v. Florida*, 399 U.S. 78, 83-84 (1970). The mere fact that Petitioner was forced

11

to weigh the pros and cons of calling his brother as an alibi witness or testifying on his own behalf to such a defense did not violate Petitioner's Fifth Amendment right against self-incrimination.

## IV.  Conclusion

The Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court denies Petitioner a Certificate of Appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

12

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claim, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.   ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

13

Dated:  March 25, 2009

The undersigned certifies that a copy of this
document was served on the attorneys of record
anc Christopher Schnorr by electronic means or
U.S. Mail on March 25, 2009.

s/Linda Vertriest
Deputy Clerk

14